Jane Gordon, ISB # 9243
Jane Gordon Law
1004 West Fort Street
Boise, ID 83702
Tel: (208) 371-4747; Fax: (208) 807-2290
Jane@JaneGordonLaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT TEMPLIN,<br><br>    Plaintiff,<br><br>    vs.<br><br>JOSH TEWALT, in his official capacity as the Director of the Idaho Department of Corrections; TIM RICHARDSON; in his official and his individual capacity; RANDY VALLEY, in his official and his individual capacity; RONA SIEGERT, in her official and her individual capacity; MHM SERVICES dba CENTURION HEALTH; CENTURION OF IDAHO, LLC; JAMIE AYUSO, an individual; CONNIE SMOCK, an individual; WILLIAM ROGERS, an individual; ASHLEY RINO, an individual; JOHNNY WU, an individual; CHRISTINA JACKSON, an individual; REX UNDERWOOD, an individual; REBECCA BALLARD, an individual; KYLE WAGNER, an individual; CHANDRA KING, an individual, CHRIS JOHNSON, an individual; TERISSA PETERSON, an individual; WENDY ORM, an individual; CODY NIECKO, an individual; BRIAN CROWL, an individual; CRYSTAL WILCOX, an individual; STACEY SCROBE, an individual,<br><br>    Defendants. | CASE NO.<br><br>COMPLAINT |

      This is a civil rights case brought under 42 U.S.C. § 1983 arising out of Defendants'

deliberate indifference to Plaintiff Robert "Bobby" Templin's serious medical condition,

COMPLAINT - 1

including serious pain, injury and suffering, future pain, injury and suffering, and permanent damage and disability to his hand, mental anguish, and future lost income. Bobby, a currently incarcerated prisoner, seeks relief for injuries he sustained while he was in custody of the Idaho Department of Correction.

Bobby's thumb was badly broken and dislocated. For several months, prison medical officials unreasonably delayed imaging and treatment. After five months, Bobby was finally sent for imaging. It took seven months to see an orthopedic specialist. Unfortunately, due to lack of treatment and care, his thumb healed in a deformity. He now suffers near constant pain and swelling in his thumb and hand, as well as a significant loss of grip strength and range of motion.

Because of his thumb, he needs to be placed in handcuffs in the front of his body. Prison and medical officials ignore the handcuff requirement, further contributing to his pain and suffering. Defendants have acted, and continued to act, with deliberate indifference to Bobby's serious medical needs, and to the substantial risk of serious harm to Plaintiff. He seeks relief from this court.

## JURISDICTION AND VENUE

1. This Court has jurisdiction and venue over the subject matter of this complaint under 42 U.S.C. § 1983; 28 U.S.C. § 1331 and § 1343(a)(3); 28 U.S.C. § 2201 and § 2202; 28 U.S.C.§ 2283 and § 2284.

2. Section 1983 authorizes civil actions for the "deprivation of any rights ... secured by the Constitution and laws" against a party acting under color of state law. 42 U.S.C. § 1983.

## PARTIES

3. Plaintiff Robert Templin ("Bobby") has been in the legal care and custody of the Idaho Department of Correction ("IDOC") since 2022. He is incarcerated under a Kootenai

County judgment of conviction for possession of a controlled substance. He was originally scheduled to be released in February of 2025. He is currently housed at Idaho Maximum Security Institution ("IMSI").

4. Josh Tewalt is the current IDOC Director. IDOC is the Idaho state agency responsible for the incarceration of inmates and operates the Idaho State Correctional Center ("ISCC") and IMSI. As director, he is responsible for IDOC operations, including the policies, procedures, and practices followed by IDOC, its contractors, and its agents. Tewalt is also the final reviewer of medical decisions by IDOC's Management and Treatment Committee. He is sued in his personal capacity for damages and professional capacity for injunctive relief.

5. Defendant MHM Services dba Centurion Health is a corporation headquartered in Virginia. It contracts with IDOC to provide medical care and treatment to its residents. Centurion Health fulfils a traditional state function of providing medical care and treatment for prison residents.

6. Defendant Centurion of Idaho, LLC is a limited liability company organized under the laws of Idaho and contracts with IDOC to provide medical care and treatment to all IDOC residents. It fulfils a traditional state function of providing medical care and treatment for prison residents. Both Centurion of Idaho, LLC and Centurion Health, Inc. are referred to as "Centurion."

7. Tim Richardson is the IMSI Warden. He is responsible for the care and medical treatment of all IMSI residents. He is sued in his personal capacity for damages and his official capacity for injunctive relief requiring the provision of proper medical treatment.

8. Randy Valley is the ISCC Warden. He is responsible for the care and medical treatment of all ISCC residents. He is sued in his personal capacity for damages and his official

capacity for injunctive relief requiring the provision of proper medical treatment.

9. Rona Siegert, RN is IDOC's Health Services Director. She monitors and oversees all aspects of healthcare services. Her duties include ensuring the contract medical provider complies with all applicable laws, rules, and regulations. She is the appellate authority for any grievance that involves complaints about medical providers and care. She is sued in her individual capacity for damages and official capacity for injunctive relief.

10. Lieutenant Jamie Ayuso is employed by IDOC as a correctional and shift commander. She is sued in her individual capacity.

11. Connie Smock, RN is employed by IDOC or Centurion as a Nurse Manager. She is sued in her individual capacity.

12. Lieutenant Cody Nieko is employed by IDOC as a correctional officer. He is sued in his individual capacity.

13. Brian Crowl is employed by IDOC as a correctional officer. He is sued in his individual capacity.

14. Kyle Wagner is employed by Centurion as a health services administrator. He is sued in his individual capacity.

15. Chris Johnson is employed by Centurion as a health services administrator. He is sued in his individual capacity. He responded to many of Bobby's Resident Concern Forms.

16. Rebecca Ballard, MD is a medical doctor employed by Centurion to provide medical treatment to IDOC residents. She is sued in her individual capacity for damages.

17. William Rogers, NP is a nurse practitioner employed by Centurion to provide medical treatment to IDOC residents. He is sued in his individual capacity.

18. Ashley Rino, RN is the statewide director of nursing for Centurion. She is sued in

her individual capacity for damages.

19. Christina Jackson, RN is employed by Centurion to provide medical services to IDOC residents. She is sued in his individual capacity.

20. Rex Underwood, NP, is employed by Centurion to provide medical services to IDOC residents. He is sued in his individual capacity.

21. Chandra King, FNCP, is employed by Centurion to provide medical services to IDOC residents. She is sued in his individual capacity.

22. Johnny Wu, MD is a doctor employed by Centurion to provide medical services to IDOC residents. He is sued in his individual capacity.

23. Terissa Peterson, RN is the director of nursing at Centurion Health. She is sued in her personal capacity.

24. Stacey Scrobe, RN is a nurse at Centurion Health. She is sued in her personal capacity.

25. Crystal Wilcox, RN is a nurse at Centurion Health. She is sued in her personal capacity.

26. Wendy Orm, MD is a doctor at IDOC employed by Centurion. She is sued in her personal capacity.

27. IDOC Does 1-5 are Idaho Department of Correction employees, whose identities are currently unknown to Plaintiff, who are responsible for off-site scheduling of medical appointments for residents within the IDOC. They are sued in their individual capacities for unreasonable scheduling delays.

28. Centurion John and Jane Does 1 – 5 are Centurion local, regional, or national administrative employees whose identities are presently unknown to Plaintiff. These Does have

decision-making authority to approve or deny care requested by an on-site medical provider. As such they are responsible for Mr. Templin's medical care. They are sued in their individual capacities for damages and official capacities for injunctive relief.

29. At all times relevant hereto, Defendants were acting under the color of state law.

**FACTS**

30. On January 29, 2023, while at ISCC, Bobby's thumb was broken.

31. Templin first received imaging for his hand on January 31, 2023. That imaging showed a "comminuted, displaced, intra-articular fracture of the thumb metacarpal base." The distal portion of the fracture was laterally displaced by 3.5 mm. Thumb fractures with a displacement greater than 3 mm generally need to be repaired using an open reduction and internal fixation, meaning using surgery to place hardware to fix the bones in place. The fracture extended into the articular surface and had a step-off of less than 2 mm. He was not referred to emergency care or to a specialist.

32. Soon after his thumb was broken, Templin was moved to IMSI, where he is currently housed.

33. While seeking medical treatment, Bobby sent kites to or otherwise interacted with the following IDOC and Centurion employees: Tim Richardson; Randy Valley; Rona Siegert, RN; Lt. Jamie Ayuso; Connie Smock, RN; Lt. Cody Niecko; Sgt. Brian Crowl; Kyle Wagner; Chris Johnson; Rebecca Ballard, MD; William Rogers, NP; Christina Jackson, RN; Rex Underwood, NP; Ashley Rino, RN; Stacey Scrobe, RN; Crystal Wilcox, RN; Chandra King, RN; Johnny Wu, MD; Terissa Peterson, RN; Wendy Orm, MD; and Doe Centurion Employees and IDOC Employees. The foregoing individuals were all involved in making medical decisions for Bobby and had the responsibility and ability to ensure that Bobby could access timely medical treatment.

34. Centurion, as the contract medical provider, and its employees, is responsible for implementing and practicing all of IDOC's Standard Operating Procedures and the National Commission on Correctional Health Care ("NCCHC") standards.

35. IDOC is responsible in ensuring that Centurion is following its Standard Operating Procedures and adopted standards from the NCCHC.

36. Centurion and its employees are responsible for scheduling appointments for the offender to meet with the appropriate medical practitioner in a timely manner.

37. Centurion's Health Administrators are responsible for ensuring that sufficient medical staff is hired, present, and fulfilling their duties to Centurion's patients. They are also responsible for training staff. They have the ability to develop medical policy and ensure implementation.

38. Centurion's Health Administrators failed to devise or enforce policies and procedures that would ensure Bobby's adequate medical care and support. They failed to ensure that Bobby was timely scheduled with a provider who could properly assess and treat his hand injury. They failed to ensure that he would be able to access physical therapy. They failed to ensure that prescribed Celebrex is available. These failures are in despite of the fact that it was routine treatment within the standard of care for the community for this injury.

39. The Centurion medical providers at ISMI who were responsible for Bobby's care failed to expeditiously schedule an appointment with a specialist, or follow up expeditiously to ensure that a follow-up appointment was scheduled. This failure to timely see a specialist caused a permanent deformity of his hand.

40. IDOC employees failed to expeditiously schedule an appointment with a specialist, or follow up expeditiously to ensure that a follow-up appointment was scheduled. This failure to

timely see a specialist caused a permanent deformity of his hand.

41. Bobby sent Resident Concern Forms, Health Services Requests, and greivances on a continual basis to Defendants.

**Medical History**

42. On January 31, 2023, Rebecca Ballard, MD evaluated Bobby. She confirmed the x-ray shows a displaced thumb fracture. Her plan notes state "[i]mmobilize and refer to hand surgery/ortho asap." She did not follow up with anyone to ensure that Bobby was actually seen by an orthopedic specialist or that it was actually scheduled.

43. On February 3, 2023, Nurse Wilcox evaluated Bobby's health service request, recording that he "has urgent consult for ortho due to thumb fracture." Nurse Wilcox did not follow up with anyone to ensure that Bobby was actually seen by an orthopedic specialist or that it was actually scheduled.

44. On February 9, 2023, Bobby was seen by Rex Underwood, ARNP, who reviewed Bobby's x-ray showing the displaced fracture, noted that Bobby was in a splint, and that a hand specialist consult was placed. It does not appear that Underwood ever followed up to ensure that the hand specialist consult happened.

45. Nurse Wilcox saw Bobby again on February 10, 2023, she documented that his fingers and hand are cold to the touch and Bobby reported numbness in his fingers. She wrapped his hand with ace wrap. She did not follow up to ensure that he saw an orthopedic specialist.

46. On February 11, 2023, Bobby sent a Resident Concern Form to Medical stating, "I've been in the hole now 14 days with a broken hand. My hand is only getting worse without the medical care I need." Health Services Administrator Johnson told Bobby "we are working to get you scheduled with a specialist."

47. On February 11, 2023, Bobby also sent a Resident Concern Form to Warden Valley stating, "14 days ago my hand was broken so severely that medical here at ICC can't fix it. A medical told me I have to go to a hospital or surgeon for medical care. Two weeks and I still haven't been transported to get the medical attention I need."

48. On February 20, 2023, upon information and belief, Nurse Jackson told Bobby that they were trying to get him into surgery for his hand. She evaluated him in his cell, where Bobby reported numbness and a decreased range of motion in his index finger. Nurse Jackson told Bobby to leave his splint on and elevate the hand. She did not order a specialist consult, or follow up to ensure he was being seen by a specialist.

49. St. Luke's appeared to have received a referral for Bobby to see an orthopedic specialist on February 3, 2023, the next entry in the St. Luke's file was May 19, 2023. There does not appear to be any contact between IDOC, Centurion and St. Luke's between February 3 and. May 19, 2023.

50. On February 24, 2023, a mental health counselor evaluated Bobby for a progress note and found, "PT appears to be experiencing increased mental health symptoms congruent to anxiety due to his physical health."

51. On February 25, 2023, Bobby sent a Resident Concern Form to the Medical Director of Nursing stating "my hand has been broken now for 30 days. This is caused serious difficulty in daily living. Also, I am in constant fear that if not repaired now I will lose mobility in my hand, seriously affecting hand function. The repair of my hand is medically necessary. I am in chronic pain and anxiety due to my hand injury." Health Services Administrator Johnson told Bobby, seemingly unconcerned, "We have now been able to find you a provider to see you for your hand."

52. On February 27, 2023, Bobby was told that an offsite appointment had been scheduled.

53. On March 1, 2023, Dr. Wu examined Bobby's hand and recognized that Bobby should have had surgery. Again, Dr. Wu did not ensure that an appointment with a specialist was actually scheduled or follow up to ensure the appointment happened.

54. On March 5, 2023, Bobby sent a HSR to Nurse Smock asking for help with his hand and to "please help." Nurse Smock responded that if Bobby wants an update, to send an HSR to Nurse Practitioner Rogers instead.

55. On March 7, 2023, Health Services Administrator Johnson again told Bobby he was scheduled with an orthopedist.

56. On March 14, 2023, Bobby saw Nurse Practitioner Rogers, who reviewed the January x-ray and did not refer him to emergency medical care. The medical record reflects that Bobby had sent in at least 14 Health Services Requests ("HSRs") at that point relating to his hand.

57. On March 30, 2023, Bobby asked via a Resident Concern Form why he was not receiving replies to his grievances, he was told that "medical is slowly working through grievances."

58. On April 6, 2023, upon information and belief, Nurse Practitioner Rogers evaluated Bobby's hand for swelling and remarked that Bobby "fell through the cracks somewhere" regarding the long wait for medical treatment.

59. On May 10, 2023, Nurse King examined Bobby's hand. She recorded "patient has limited mobility of his right thumb, unable to close and grasp my finger in hand. Unable to bring thumb to any of the other digits. The palm under the 1st digit is swollen without pitting or erythema. Unable to extend his first digit out. He is able to flex and extend digits 2-5 with some

coaxing. PROM of digits 2-5 WNL" Despite her observations, she did not escalate his need for seeing an orthopedic specialist. She told him to keep his hand elevated. She did not do anything to ensure he could see a specialist or follow up to ensure an appointment was scheduled.

60. Due to short staffing or other incompetencies, Bobby has suffered delays in the grievance process and getting appropriate medical treatment.

**Orthopedic Specialist**

61. Ultimately, Bobby did not have a CT scan until June 30, 2023, and was not seen by an orthopedic specialist until July 25, 2023, seven months after this thumb was broken. At that point, the bone had healed in a deformity and could no longer be repaired absent additional invasive procedures, such as thumb fusion surgery.

62. Dr. Judd, an board certified orthopedic hand specialist at St. Luke's, diagnosed Bobby with a right thumb metacarpal intra-articular base fracture, also known as a Bennett fracture, which had "healed with a deformity." Bennett fractures are generally surgical and can require hardware to encourage proper healing.

63. When a Bennett fracture does not heal properly, it causes deformity of the thumb with loss of range of motion and loss of grip strength. Bobby is unable to ascertain the extent and permanency of his injury because he is unable to get the medical treatment he needs due to being incarcerated.

64. On December 12, 2023, upon information and belief, Dr. Judd discouraged surgery to fix Bobby's thumb because of IDOC and Centurion's failure to ensure patients attend post-operative appointments.

65. Surgery to repair the deformity is not guaranteed to restore Bobby's range of motion or grip strength or decrease or stop the pain and swelling.

66. The injury has caused a marked decrease in Bobby's grip strength in his right hand. He has lost significant range of motion in his hand and wrist.

67. Bobby's right hand and wrist are continuously swollen and painful.

68. Dr. Judd prescribed Celebrex for Bobby's hand. There was a significant delay in Bobby starting the medication.

**Front Cuff Order**

69. Both Dr. Orm and Dr. Judd provided Bobby with a front cuff order to mitigate the pain and swelling in his hand and wrist. His front cuff memo was discontinued by Lt. Neicko and Nurse Scrobe on March 7, 2024 for unknown reasons.

70. Instead of a front cuff, IDOC employees could alternately use two sets of handcuffs, or "double cuff" Bobby, which they are not doing.

**Bobby's Current Status**

71. Bobby continues to send HSRs, Resident Concern Forms, and Grievances in an attempt to obtain physical therapy or other medical treatment that could alleviate the pain and swelling he suffers in his right hand. However, the damage has largely been done as his thumb has healed with a deformity.

72. Now, because of the injury to his right hand, Bobby needs future medical treatment, has suffered permanent impairment and deformity, has lost access to the labor market, and has lost access to future wages. He has also suffered non-economic damages, incredible anxiety from having a permanent disability, and pain and suffering.

73. Prior to incarceration, Bobby worked in construction. Due to the deformity on his dominant hand, his ability to work in construction has diminished. He has decreased range of motion, decreased grip strength, and decreased ability to hold items. This has caused Bobby a loss

in access to the labor market upon his release and future lost earnings.

74. Bobby had to obtain the services of an attorney for this case and hired Jane Gordon Law.

**CLAIMS FOR RELIEF**
**Eighth and Fourteenth Amendments 42 U.S.C. § 1983**
**Cruel and Unusual Punishment – Delay and Denial of Medical Care**

75. Defendants were acting under the color of state law.

76. Bobby's broken thumb was -- and continues to be -- a serious medical need.

77. Each Defendant was deliberately indifferent to Bobby's broken thumb and the resulting pain.

78. Each Defendant knew of his serious medical condition and disregarded it by failing to take any reasonable measures to address it.

79. As of January 31, 2023, when he was initially evaluated and x-rayed by IDOC medical staff and imaging showed that his thumb fracture had a 3.5 mm displacement, Bobby should have been taken to emergency medical treatment.

80. The weeks following his x-ray presented many opportunities for Defendants to take Bobby to seek emergency medical treatment to save his hand. Instead, they waited until his fracture was healed in a deformity before taking him to see a specialist.

81. Defendants failed to ensure that Bobby was actually going to a specialist for medical treatment. Defendants failed to ensure that an appointment with a specialist was actually scheduled. Defendants failed to expeditiously have Bobby seen by a specialist.

82. Defendants further contribute to Bobby's injury by refusing to use front handcuffs or use double handcuffs while his hands are behind his back. This exacerbates the swelling and pain in his hand due to the angle that the handcuffs force his wrists into.

83. Bobby should not have had to wait seven months to see an orthopedic specialist. It was deliberate indifference to not seek immediately medical attention and to continuously delay and fail to schedule an appointment with a hand specialist.

84. This deliberate indifference caused severe harm to Bobby.

## PRAYER FOR RELIEF

1. WHEREFORE, Plaintiff Robert Templin respectfully prays this Court enter judgment granting him the following:

2. A declaration that the acts and omissions set forth herein violated Plaintiff's rights under the Constitution and the laws of the United States.

3. Injunctive relief ordering Defendants or their successors to provide Plaintiff with effective treatment for his serious medical condition.

4. Compensatory damages against each Defendant in the amount to be determined at trial, jointly and severally, against each Defendant for serious pain, suffering, unnecessary physically injury, disability, deformity, mental anguish, loss of access to the labor market and future lost wages.

5. Punitive damage against each Defendant in the amount to be determined at trial.

6. A jury on all triable issues.

7. Attorney's fees, costs, and expenses under 42 USC § 1988 and all relevant statutes and rules.

8. Any additional relief this Court deems just, proper, and equitable.

DATED JANUARY 27, 2025.

          JANE GORDON LAW

          */s/ Jane Gordon*
          Jane Gordon, of the firm
          Attorney for Plaintiff