UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT TEMPLIN,<br><br>      Plaintiff,<br><br>v.<br><br>JOSH TEWALT, in his official capacity as the Director of the Idaho Department of Corrections; TIM RICHARDSON; in his official and his individual capacity; RANDY VALLEY, in his official and his individual capacity; RONA SIEGERT, in her official and her individual capacity; MHM SERVICES dba CENTURION HEALTH; CENTURION OF IDAHO, LLC; JAMIE AYUSO, an individual; CONNIE SMOCK, an individual; WILLIAM ROGERS, an individual; ASHLEY RINO, an individual; JOHNNY WU, an individual; CHRISTINA JACKSON, an individual; REX UNDERWOOD, an individual; REBECCA BALLARD, an individual; KYLE WAGNER, an individual; CHANDRA KING, an individual, CHRIS JOHNSON, an individual; TERISSA PETERSON, an individual; WENDY ORM, an individual; CODY NIECKO, an individual; BRIAN CROWL, an individual; CRYSTAL WILCOX, an individual; STACEY SCROBE, an individual,,<br><br>      Defendants. | **INITIAL REVIEW ORDER**<br>Case No. 1:25-cv-00048-BLW |

# INTRODUCTION

Plaintiff Robert Templin filed this action while incarcerated at the Idaho Maximum Security Institution (IMSI). He alleges that Defendants violated his Eighth Amendment rights by denying him medical care after he broke his hand. Though he paid the filing fee and is represented by counsel, the Court is required to screen his complaint pursuant to 28 U.S.C. § 1915A because he seeks redress from government officials.

# BACKGROUND

Templin alleges that prison medical providers failed to provide him with appropriate medical care after he broke his thumb in January 2023. Imaging taken two days after the break showed a fracture of 3.5mm, which is serious enough to generally require surgery. He was incarcerated in the Idaho State Correctional Center (ISCC) when the injury occurred but moved to the Idaho Maximum Security Institution (IMSI) soon after.

Templin was not taken to see a specialist until July 2023. As a result, his hand healed with a permanent deformity. He initially received a front cuff order to mitigate the pain in his hand and wrist, but IDOC and Centurion staff discontinued the order in March 2024, causing him further pain. Templin now seeks damages from individuals and entities involved in his treatment, and injunctive relief requiring Defendants to provide him with appropriate medical care.

## LEGAL STANDARD

The Court is required to screen civil actions brought by prisoners seeking redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss any portion of the complaint that is "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To state an Eighth Amendment claim for lack of adequate prison medical care, a complaint must contain facts alleging that prison officials' "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)). However, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.*

An official acts with deliberate indifference exists when he or she knows of and disregards a serious medical condition, or is "aware of facts from which the

inference could be drawn that a substantial risk of harm exists," and actually draws such an inference. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).

## ANALYSIS

Templin brings claims against more than twenty defendants who fall into three main categories. First, he sues several IDOC officials in their official capacities for injunctive relief: IDOC Director Josh Tewalt, IMSI Warden Tim Richardson, ISCC Warden Randy Valley, and IDOC Health Services Director Rona Siegert. Second, he sues entities Centurion Health and Centurion of Idaho, LLC (collectively, "Centurion"), which contract with the IDOC to provide medical care to prisoners. Third, he sues numerous IDOC and Centurion employees in their individual capacity.

1. **Claims Upon Which Plaintiff May Proceed**

The Court will begin with the IDOC defendants sued in their official capacities for injunctive relief. Templin's broken hand is clearly a serious medical need, and he alleges that he has been denied the appropriate treatment. For this reason, his complaint on its face states a valid claim. It is unclear, however,

whether Templin is still incarcerated—the complaint notes that he was "originally scheduled" to be released in February 2025—and whether the claim is moot if he has been released. For now, the Court will allow him to proceed with his claims against Tewalt, Richardson, Valley, and Siegert in their official capacities.

Second, he may also proceed with his claims against Centurion for both damages and injunctive relief. To bring a § 1983 claim against a private entity performing a government function (such as Corizon), a plaintiff must plausibly allege that the execution of an official policy or an unofficial custom inflicted the injury of which the plaintiff complains. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Tsao v. Desert Palace*, Inc., 698 F.3d 1128, 1139 (9th Cir. 2012). This can be "a policy of inaction," where the entity fails "to implement procedural safeguards to prevent constitutional violations." *Tsao*, 698 F.3d at 1143. The plaintiff must show that (1) that the defendant had "notice that its omission would likely result in a constitutional violation," and (2) that the entity "could have prevented the violation with an appropriate policy." *Jackson v. Barnes*, 749 F.3d 755, 763 (2014).

Templin's complaint alleges, first, that Centurion, through its staff, had notice that he urgently needed medical treatment. Second, he alleges that Centurion could prevented the failure to treat him if it had developed proper policies for medical care. *Id.* ¶¶ 37-39. Beyond his own deprivation, he suggests this was a

pattern for Centurion. For instance, an external doctor recommended against surgery "because of IDOC and Centurion's failure to ensure patients attend postoperative appointments." *Compl.* ¶ 64, Dkt. 1. In the words of one Centurion staffer, Templin "fell through the cracks somewhere." *Id.* ¶ 58. These allegations are sufficient to state a claim for an Eighth Amendment violations by Centurion Health and Centurion of Idaho.

Finally, Templin may proceed with claims against the following individuals who were allegedly directly involved in his care: Randy Valley (ISCC Warden), Connie Smock (Nurse Manager), Cody Nieko (IDOC correctional officer), Chris Johnson (Centurion health services administrator), Rebecca Ballard (Centurion doctor), William Rogers (Centurion nurse), Christina Jackson (Centurion nurse), Rex Underwood (Centurion nurse), Chandra King (Centurion nurse), Stacey Scrobe (Centurion nurse), Crystal Wilcox (Centurion nurse), and Johnny Wu (Centurion doctor). Although the factual allegations are sparse in many cases, Templin describes specific interactions with each of these individuals showing that they knew of his urgent need for medical treatment. He also describes a failure by each of them to ensure he received that treatment. *Compl.* ¶¶ 42-59, 69-70. This is enough for the claims to survive at this preliminary phase.

2. **Claims Upon Which Plaintiff May Not Proceed**

On the other hand, many defendants named in the complaint do not appear

to be directly implicated in the failure to provide Templin with medical care. Prison officials generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). A defendant not directly involved in the violation may be held liable as a supervisor only if there is "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).

Templin has named seven IDOC and Centurion staff members allegedly involved in his treatment without providing any details whatsoever about their conduct. The individual allegations against Tim Richardson, Rona Siegert, Jamie Ayuso, Terissa Peterson, Ashley Rino, Brown Crowl, and Kyle Wagner consists solely of the contention that Templin "sent kites to or otherwise interacted with the following IDOC and Centurion employees." *Compl.* ¶ 33, Dkt. 1. This bald assertion fails to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face"). Likewise, the complaint does not describe any wrongful conduct by Josh Tewalt, or even allege that he was aware of Templin's injury.

Additionally, the apparent basis for the claim against Wendy Orm, an IDOC doctor, is that she provided Templin with a front cuff order. *Compl.* ¶ 69, Dkt. 1.

The complaint does not suggest that she was involved in the decision to discontinue the front cuff order, or in the broader failure to treat the injury. In other words, the complaint alleges only that Orm tried to lessen Templin's pain. This does not suffice to create a claim for an Eighth Amendment violation.

Accordingly, the Court will dismiss the claims against Tewalt, Richardson, Siegert, Ayuso, Peterson, Rino, Crowl, Wagner, and Orm in their individual capacities. Templin may request leave to amend his complaint if he discovers additional facts to suggest that these individuals knowingly ignored his need for medical treatment.

## ORDER

**IT IS ORDERED that:**

1. The claims against Defendants Tewalt, Richardson, Siegert, Ayuso, Peterson, Rino, Crowl, Wagner, and Orm in their individual capacities are DISMISSED.

2. Defendants Ayuso, Rino, Crowl, Wagner, and Orm are TERMINATED as parties to this action.

3. Plaintiff may PROCEED on his remaining claims.

4. If Plaintiff later discovers facts sufficient to support a claim that has been

dismissed, Plaintiff may move to amend the complaint to assert such claims.[1]

DATED: May 6, 2025

B. Lynn Winmill
U.S. District Court Judge

---

[1] Any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon or incorporate by reference prior pleadings. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend.").

INITIAL REVIEW ORDER - 9