UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT TEMPLIN,<br><br>     Plaintiff,<br><br>     v.<br><br>JOSH TEWALT, in his capacity as the Director of the Idaho Department of Corrections, et al.,<br><br>     Defendants. | Case No. 1:25-cv-00048-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it two Motions to Dismiss (Dkt. 15, 16) filed by Defendants. For the reasons explained below, the Court will allow Plaintiff to proceed on the claims for damages against Centurion Health, Centurion of Idaho, and Chris Johnson. The remaining claims will be dismissed with leave to amend.

## BACKGROUND

This case is about the alleged failure of the Idaho Department of Corrections (IDOC) to provide Plaintiff Robert Templin with proper medical care after he broke his thumb in January 2023. At this stage, the facts alleged in his Complaint are presumed true.

Mr. Templin broke his thumb on January 29, 2023, while incarcerated at the Idaho State Correctional Center (ISCC). He was moved to the Idaho Maximum Security Institute (IMSI) shortly thereafter. Imaging done on January 31 revealed a fracture severe enough to likely require surgery. His first doctor, Defendant Rebecca Ballard, noted that Mr. Templin should be referred "to hand surgery/ortho asap." *Compl.* ¶ 42, Dkt. 1. Over the next seven months, he saw numerous medical providers from Centurion, the IDOC's health care contractor, but he did not go to an orthopedic specialist until late July.

On February 3, 2023, Defendant Crystal Wilcox, a Centurion nurse, noted that Mr. Templin had "urgent consult for ortho due to the thumb fracture." *Id.* ¶ 43. St. Luke's Hospital apparently received a referral that day. The following week, Mr. Templin was evaluated by another Centurion nurse, Defendant Rex Underwood, and he met for a second time with Nurse Wilcox. *Id.* ¶¶ 44-45. He also sent Resident Concern Forms to a health services administrator, Defendant Chris Johnson, and the ISCC Warden, Defendant Randy Valley. *Id.* ¶¶ 46-47. After another week, he saw a third Centurion nurse, Defendant Christina Jackson, who told him that they were working to get him into surgery. A few days later, he sent a Resident Concern Form to the Director of Nursing. On February 27, Mr. Johnson told Mr. Templin that he had an offsite appointment scheduled.

But Mr. Templin did not go to an offsite appointment. Instead, on March 1,

he saw a Centurion doctor, Defendant Johnny Wu, who recognized that he needed surgery but did not otherwise follow up. On March 5, Mr. Templin sent a Health Service Request (HSR) to another Centurion nurse, Defendant Connie Smock, who directed him to yet another nurse, Defendant William Rogers. Around this time, Mr. Johnson again told Mr. Templin that he was scheduled with an orthopedist.

On March 14, still without an orthopedic consult, Mr. Templin saw Nurse Rogers. By this time, Mr. Templin had sent at least fourteen HSRs about his hand. On April 6, Nurse Rogers evaluated him again and observed that he "fell through the cracks somewhere." *Id.* ¶ 58. Apparently still dangling through the cracks, Mr. Templin's next medical visit did not occur until May 10 with a different Centurion nurse, Defendant Chandra King, who noted that he had limited mobility in his hand.

On June 30, Mr. Templin finally received a CT scan. On July 25, seven months after the injury, he met with a St. Luke's orthopedist. That doctor determined that his hand had healed with a deformity that would likely require surgery to repair. The doctor, however, discouraged surgery due to Centurion's failure to ensure that incarcerated patients receive proper follow-up care.

During this period, Mr. Templin had a front cuff order to mitigate pain and swelling in his hand. In March 2024, the front cuff memo was discontinued for unknown reasons by an IDOC correctional officer and a Centurion nurse,

Defendants Cody Nieko and Stacy Scrobe.

Mr. Templin filed this § 1983 lawsuit in January 2025 while still incarcerated, but he was released in March 2025. His Complaint names as defendants Centurion Health, Centurion of Idaho, and approximately two dozen individuals and officials involved in his medical care. In addition to damages, he seeks injunctive relief to require the IDOC to provide him with proper treatment. The Court issued an Initial Review Order in May 2025, which dismissed several defendants for failure to state a claim but otherwise allowed Mr. Templin to proceed. The remaining defendants now move to dismiss Templin's Complaint.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Though a complaint "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (cleaned up). However, Rule 12(b)(6) "does not impose a probability requirement at the pleading stage; it

simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of the truth of the allegations. *Twombly*, 550 U.S. at 556.

## ANALYSIS

Mr. Templin alleges that Defendants violated the Eighth Amendment by failing to provide him with adequate care for his hand. To sustain an Eighth Amendment claim based on prison medical treatment, a plaintiff must prove "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). This is a two part test. First, the medical need must be "serious," meaning that "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Second, the defendant's response to that need must be "deliberately indifferent." This prong requires "a purposeful act or failure to act" that results in harm. *Id.* Though "mere negligence" is insufficient, conduct need not rise to the level of "deliberate or knowing harm." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care." *Estelle*, 429 U.S. at 104-05.

As explained further below, the Court will dismiss most of Mr. Templin's claims but allow him to proceed against Mr. Johnson, Centurion Health, and Centurion of Idaho.

### 1. Claims for Injunctive Relief

Most easily, Mr. Templin's request for injunctive relief is now moot because he has been released. "An inmate's release from prison while his claims are pending generally will moot any claims for injunctive relief relating to the prison's policies." *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995). Mr. Templin has not argued that any exception to mootness doctrine applies—or even responded to the contention that this aspect of the Complain should be dismissed. Therefore, the Court will dismiss the claims for injunctive relief, which are made against Centurion, IDOC Director Josh Tewalt,[1] Warden Randy Valley, Warden Tim Richardson, and IDOC Health Services Director Rona Siegert, all in their official capacity. In conjunction with the Initial Review Order, this means that Defendants Tewalt, Richardson, and Siegert are terminated as parties to this action.

### 2. Claims for Damages

Mr. Templin also seeks damages pursuant to § 1983 from Centurion and individual defendants involved in his care. His theory as to the individual defendants is that they knew that he needed prompt specialized treatment for his hand but failed to ensure that he received that care. As to Centurion, he alleges that

---

[1] On March 19, 2025, Bree Derrick replaced Josh Tewalt as IDOC Director. Ms. Derrick would presumably be substituted for Mr. Tewalt had he remained in this case in his official capacity. *See* Press Release, Gov. Little Announces Changes in His Administration (Mar. 19, 2025), https://gov.idaho.gov/pressrelease/gov-little-announces-changes-in-his-administration/.

the entity failed to create or enforce policies necessary to provide prisoners like him with constitutionally adequate medical treatment.

### A. Individual Defendants

The Court first considers the claims against individual defendants. These include Warden Valley, Lieutenant Niecko, and eight Centurion medical providers. Defendants argue, first, that Mr. Templin has failed to allege more than "mere negligence" as to any individual defendant. Second, they point out that many of the defendants did not participate directly in Mr. Templin's care, and the denial of an administrative grievance does not amount to a constitutional violence.

Mr. Templin's broken hand was clearly a serious medical need, and the failure to promptly provide him with appropriate treatment caused him harm—he experienced months of pain, and it apparently healed with a long-term deformity. The harder question is who, if anyone, purposefully failed to act. This is particularly challenging because Mr. Templin, in the words of one Defendant, "fell through the cracks somewhere." *Compl.* ¶ 58, Dkt. 1. Based on the Complaint, it appears that even many Centurion employees did not know who was responsible for getting Mr. Templin to the appropriate specialist.

For the medical provider defendants, the Court agrees that the allegations are too insubstantial to survive, even at this early stage. Dr. Ballard evaluated Mr. Templin once, shortly after he sustained the injury, and she referred him for

surgery "asap." *Id.* ¶ 42. Her immediate referral distinguishes this case from *Jett v. Penner*, 439 F.3d 1091, 1094-95 (9th Cir. 2006), where prison doctors failed to refer the plaintiff for outside care—or even give him a proper cast—for more than five months after he broke his hand. Here, Dr. Ballard did not "fail to act," unless she herself was responsible for making the offsite appointment. Nothing in the Complaint suggests this was the case, or even that Dr. Ballard had such authority. The same applies to Dr. Wu, who saw Mr. Templin on March 1.

Likewise, the nurse defendants met with Mr. Templin once or twice at most, and the Complaint suggests that all of them provided appropriate care under the circumstances. For instance, Nurse Underwood and Nurse Jackson, who treated Mr. Templin in February, were both under the impression that he had an upcoming consult with a specialist. *Id.* ¶¶ 44, 48. Although neither nurse ensured that appointment happened promptly, there is no indication that such scheduling issues fell to them. Deliberate indifference requires a much higher level of culpability.

The analysis is the same for Nurse Wilcox, who saw Mr. Templin twice in February, and for Nurse King, who saw him once in May. Nurse Smock did not even treat Mr. Templin, but rather directed him to Nurse Rogers in response to his HSR. The Complaint does not explain how this brief verbal interaction possibly rises to the level of a constitutional violation.

For her part, Nurse Rogers evaluated Mr. Templin twice, on March 14 and

April 6. She apparently did recognize that he "fell through the cracks," which makes the argument for her liability slightly stronger. But again, nothing in the Complaint suggests that Nurse Rogers had the responsibility or authority to ensure that Mr. Templin received outside care from a specialist. She will be dismissed, along with the other medical providers who treated Mr. Templin's hand.

Mr. Templin's next set of allegations, against Nurse Scrobe and Lieutenant Niecko, concern the decision to discontinue his front cuff order. He received the front cuff order shortly after breaking his hand, and it was discontinued in March 2024, more than a year later. The Complaint fails to explain what harm this discontinuation caused, let alone that Nurse Scrobe and Lieutenant Niecko were deliberately indifferent to that harm. They will be dismissed from the case.

This leaves Mr. Johnson, the health service administrator, and Warden Valley. Warden Valley's only involvement consisted of his receipt of a Resident Concern Form on February 11, 2023. *Compl.* ¶ 47, Dkt. 1. This was right around the time that Mr. Templin was moved from ISCC to IMSI, putting him under the authority of a different warden. *See id.* ¶ 32. Given the transfer, Warden Valley's failure to respond to this single form is far short of deliberate indifference.

The claim against Mr. Johnson, however, fares better. His responsibilities are not fully clear from the Complaint, but he appears to have been meaningfully involved in the effort (or lack thereof) to get Mr. Templin an appointment with an

orthopedist. Mr. Johnson was aware of the broken hand by February 11, and he stated that they were "working" to get Mr. Templin scheduled with a specialist. *Id.* ¶ 46. The two further communicated on February 25 and March 7, when Mr. Johnson stated that they had found a provider and scheduled the appointment. *Id.* ¶¶ 51, 55. The Court is unclear whether Mr. Templin believes that this statement was false, or if it referred to the July appointment. But even if the July appointment was in fact booked at this point, such a long delay could constitute an Eighth Amendment violation given the nature of Mr. Templin's injury and the recommendation of Centurion's own doctors for prompt surgery. This interpretation is bolstered by the specialist's later statement that Centurion and the IDOC fail to ensure proper post-operative appointments. *See id.* ¶ 64.

A plausible claim is not the same as a probable claim, and the sparseness of the allegations make this a close call. Perhaps, as Defendants suggest, the delay occurred because no specialist could see Mr. Templin more promptly. Or perhaps the delay resulted from medical providers' professional judgment that he did not need immediate surgery (despite several remarks to the contrary). But these are factual matters that cannot be resolved here. The facts alleged in the Complaint are enough for the claim against Mr. Johnson to survive for now.

### B. Centurion

The Court finally turns to the claim for damages against Centurion Health

and Centurion of Idaho, which contract with the IDOC to provide health care to inmates. To start, it is not entirely clear that Defendants are even seeking Centurion's dismissal. Though they ask the Court to dismiss the entire Complaint, the Motion fails to offer any specific analysis of Centurion's liability.

Substantively, Centurion is a private entity performing a government function and is therefore subject to *Monell* liability for failure "to implement procedural safeguards to prevent constitutional violations." Dkt. 10 at 5-6; *see Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012). This requires the plaintiff to show (1) that the defendant had "notice that its omission would likely result in a constitutional violation," and (2) that the entity "could have prevented the violation with an appropriate policy." *Jackson v. Barnes*, 749 F.3d 755, 763 (2014). As explained in the Initial Review Order, the facts alleged in the Complaint plausibly suggest that Centurion knew of Mr. Templin's need for urgent treatment by a specialist but nonetheless followed a "policy of inaction" that caused him serious harm. *See Tsao*, 698 F.3d at 1143. Mr. Templin may proceed against Centurion.

## ORDER

THEREFORE, IT IS HEREBY ORDERED:

1. Defendants' Motion to Dismiss (Dkt. 15) is **GRANTED IN PART and**

**DENIED IN PART**. Plaintiff may proceed with his claims for damages against Defendants Chris Johnson, Centurion Health, and Centurion of Idaho. All other claims are dismissed with leave to amend.

2. Defendant Niecko's Motion to Dismiss (Dkt. 16) is **GRANTED**.

3. Plaintiff must file an amended complaint within 21 days of the date of this Order.

DATED: October 20, 2025

_____

B. Lynn Winmill
U.S. District Court Judge