Andrew C. Brassey, ISB No. 2128
Jason G. Murray, ISB No. 6172
BRASSEY CRAWFORD, PLLC
345 Bobwhite Ct., Suite 215
Boise, Idaho 83706
Telephone: (208) 344-7300
Facsimile: (208) 344-7077
acb@brassey.net
jgm@brassey.net

*Attorneys for Defendants Centurion of Idaho, LLC, Josh Tewalt, Tim Richardson, Randy Valley, Rona Siegert, Connie Smock, Johnny Wu, Christina Jackson, Rex Underwood, Rebecca Ballard, Chandra King, Chris Johnson, Crystal Wilcox, and Stacey Scrobe*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT TEMPLIN,<br><br>　　　　Plaintiff,<br><br>v.<br><br>JOSH TEWALT, in his official capacity as the Director of the Idaho Department of Corrections; et al.,<br><br>　　　　Defendants. | Case No. 1:25-cv-00048-BLW<br><br>**RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT** |

COME NOW the above-named Defendants, Josh Tewalt, Centurion of Idaho, LLC, Tim Richardson, Randy Valley, Rona Siegert, Connie Smock, Chris Johnson, Rebecca Ballard, Christina Jackson, Rex Underwood, Chandra King, Johnny Wu, Stacey Scrobe and Crystal Wilcox, by and through their counsel of record, Brassey Crawford, PLLC, and hereby submit their Response to Plaintiff's Motion for Leave to File First Amended Complaint as follows:

RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT - 1

## INTRODUCTION

On October 20, 2025, the Court granted in part and denied in part Defendants' Motion to Dismiss with leave to amend. Dkt. 26. On November 10, 2025, the Plaintiff, Robert Templin (hereinafter "Templin"), filed a Motion for Leave to File First Amended Complaint (hereinafter the "Motion"). Dkt. 27. The First Amended Complaint (hereinafter the "Amended Complaint") seeks to not only add new facts to support his claim of cruel and unusual punishment under 42 U.S.C. § 1983. Dkt. 27-1, Exhibits A & B. However, Templin knew of the newly alleged facts at the time of initial filing and fails to allege sufficient facts within the Amended Complaint to show the existence of a valid and sufficient § 1983 claim. Therefore, the Amended Complaint should be considered unduly delayed and futile, and the Motion properly denied.

## BACKGROUND

On January 28, 2025, Templin filed the present suit, alleging injuries to his hand while he was incarcerated with the Idaho Department of Correction ("IDOC"), and that the Defendants acted with deliberate indifference to his serious medical needs. Dkt. 1 at pp. 1-2. After two Motions to Dismiss were filed by Defendants (Dkt. 15, 16), this Court allowed claims for damages to proceed against Centurion Health, Centurion of Idaho and Chris Johnson, and dismissed the remaining claims with leave to amend. Dkt. 26, p 1. On November 10, 2025, Templin filed his Motion and provided a copy of the Amended Complaint with it. *See generally* Dkt. 27.

As provided in the Amended Complaint, Templin alleges his thumb was broken on January 29, 2023. Dkt. 27-1, Exhibit B, ¶ 23. On January 31, 2023, Templin was evaluated and received imaging for his hand which revealed a fracture. *Id.* at ¶ 24. Following the evaluation, Dr. Ballard referred Templin to an orthopedic specialist. *Id.* at ¶ 39. Nurse Wilcox evaluated Templin on February 3, 2023, and noted that Templin should be referred to an orthopedic specialist. *Id.* at ¶

41.

While waiting to be seen at an orthopedic specialist's office, Templin continually received medical care at the prison. *Id.* at ¶¶ 42-60. Templin sent in numerous Health Services Requests, Resident Concern Forms, grievances and appeals. *Id.* On February 27, 2023, Templin was informed that an offsite orthopedic specialist appointment had been scheduled. *Id.* at ¶ 52. Templin received a CT scan on June 30, 2023, and was seen by an orthopedic specialist on July 25, 2023. *Id.* at ¶ 63.

Although he received continuous medical attention at the prison, Templin alleges his broken thumb healed with a deformity. *Id.* at ¶¶ 64-65. He alleges that this has caused loss in grip strength and range of motion. *Id.* at ¶ 65. Templin alleges his thumb can now only be repaired through "additional invasive procedures" up to and including surgery. *Id.* at ¶ 63. Templin further alleges that Dr. Judd, the certified orthopedic hand specialist who evaluated Templin, discouraged surgery. *Id.* at ¶ 66. Templin also alleges his injury worsened because of the manner in which he was handcuffed. *Id.* at ¶¶ 69-70.

Based on the foregoing allegations, Templin filed the instant suit and the Amended Complaint, alleging delay and denial of medical care and seeking compensatory damages. *See* Dkt. 27. For the reasons set forth below, Templin's claims were unduly delayed and do not satisfy the requirements for a § 1983 claim and are therefore futile.

## LEGAL STANDARDS

After a responsive pleading has been served, a party may amend its pleadings "only with the opposing party's written consent or the court's leave." F.R.C.P. Rule 15(a). While a party may amend its pleadings through a leave to amend, a court may deny leave to amend due to 1) undue delay, bad faith or dilatory motive on the part of the movant; 2) repeated failure to cure deficiencies

...
...
...

by amendments previously allowed; 3) undue prejudice to the opposing party by virtue of allowance of the amendment; and 4) futility of the amendment. *Forman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962).

In evaluating undue delay, a court will inquire "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) (citing *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990)). "Although delay is not a dispositive factor in the amendment analysis, it is relevant, [..] especially when no reason is given for the delay…" *Lockheed Martin Corp. v. Network Solutions Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) (internal citations omitted).

While delay alone is insufficient grounds for denial, when it is coupled with a showing of prejudice or bad faith, a court may deny the motion to amend. *Howey v. United States*, 481 F.2d 1187, 1191 (9th Cir. 1973). "[A]ny delay in amending a pleading 'will almost invariably result in some "prejudice" to the nonmoving party.'" *Mays v. Stobie*, No. 3:08-CV-552EJL-CWD, 2010 WL 5110083 at * 7 (D. Idaho Dec. 7, 2010) (quoting *Advocat v. Nexus Industries, Inc.*, 497 F.Supp. 328, 331 (D. Del. 1980)). Courts have held that an addition of complaints or parties may be indicators of prejudice. *Juarez v. Jani-King of California, Inc.*, No. 09-CV-03495-YGR, 2019 WL 2548691 at *5 (N.D. Cal. June 20, 2019).

Futility alone can justify a denial of a motion for leave to amend. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). "An amendment is futile when 'no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'" *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (quoting *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)). The standard of review for the futility of a

proposed amendment is the same standard as a Rule 12(b)(6) motion. *See Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590, 610 (6th Cir. 2016) (defining "futile" as "that it would not withstand a motion to dismiss"). "To survive a Rule 12(b)(6) motion, a complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Craghtten v. United States*, 790 F.Supp.3d 984, 989 (D. Idaho 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

A claim under § 1983 requires a plaintiff to show "(1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a "person" (4) acting under color of state law." *Crumptom v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). "In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must also show 'deliberate indifference' to his 'serious medical needs.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The facts are analyzed under both an objective standard (*i.e.* whether deprivation was serious enough to constitute cruel and unusual punishment) and a subjective standard (*i.e.* deliberate indifference). *Colwell*, 763 F.3d at 1066.

A prison official acts with deliberate indifference only where the official knows of and disregards an excessive risk to an inmate's health and safety. *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). The prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

As this Court has recognized, "governmental officials generally are not liable for damages

in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations." *Nelson v. Tewalt*, No. 1:24-CV-00333-BLW, 2024 WL 4494903, at *3 (D. Idaho Oct. 15, 2024) (emphasis added); see *Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct"). "Personal liability under § 1983 'cannot be based on prison [or jail] conditions beyond the control of a defendant.'" *Nelson*, 2024 WL 4494903, at *3 (quoting *Pinto v. Nettleship*, 737 F.2d 130, 133 (1st Cir. 1984)). Moreover, "a defendant whose only role in a constitutional violation involved the denial of an administrative grievance cannot be held liable under § 1983." *Nelson*, 2024 WL 4494903, at *3.

## ARGUMENT

**A.    Templin's Amended Complaint was unduly delayed and is based on facts which were available to Templin at the time of the initial filing.**

Templin's Amended Complaint was filed approximately nine months after his original Complaint was filed. In the Amended Complaint, there are no facts alleged that were unknown at the time of the original filing. Further, Templin has provided no satisfactory explanation for why the facts which were available from the initial filing of this action were not included in the original filing.

The Ninth Circuit upheld a district court's decision to deny a motion to amend for undue delay. See *AmerisourceBergen Corp.*, 465 F.3d at 953. One of the district court's reasons for denying the motion was that the plaintiff did not allege any newly discovered facts or explain the delay of more than one year in bringing the facts to the attention of the court. *Id.* at 964 n. 9. The court found that a fifteen-month delay with no satisfactory explanation for the change in theory warranted a denial for the motion. *Id.* at 953. Despite still having eight months of discovery remaining, the court also found that requiring the defendant to defend against different facts and

theories at that stage of the litigation was prejudicial against the defendant and would unfairly delay the litigation. *Id.* The court also noted another instance in which the Ninth Circuit denied a motion to amend as unduly delayed after an eight-month delay between the time of obtaining a relevant fact and seeking leave to amend. *Id.* (citing *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 799 (9th Cir. 1991)); *see also Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (finding an eight-month delay from the time of obtaining facts until filing amended complaint constituted undue delay); *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (denying a motion to amend after finding the alleged new facts were known to the plaintiff at the time of filing the complaint and the motion would be prejudicial and a dilatory tactic).

In the instant case, Templin's Amended Complaint came approximately ten months after the original Complaint was filed. *Compare* Dkt. 1 *with* Dkt. 27. The medical records indicate that as early as February 9, 2024, Templin requested a release of information for his attorney. Decl. of Counsel, Exhibit A, pp. CENT 1129-1132. Thus, it reasonably may be inferred that Templin knew about the newly provided facts for approximately a year prior to filing the original Complaint.

Further, Templin's Amended Complaint adds facts discussing Defendant Centurion's policies and procedures. Dkt. 27-1, Exhibit B, ¶¶ 28, 29, 30, 31. However, Templin fails to adequately show how these policies and procedures were violated and how that was a proximate cause of his injuries. For example, Templin states that every Defendant had the responsibility and ability to request a visit to both an orthopedic specialist and emergency services. *Id.* at ¶ 28, 29. It is unclear from the newly alleged facts how such actions deprived Templin of medical care or how Defendants acted with deliberate indifference to Templin's medical needs. *Colwell*, 763 F.3d at 1066.

The medical records instead outline Defendants' numerous efforts to provide Templin with

medical treatments and opportunities to assist with Templin's injuries. For example, Templin's providers placed a request for orthopedic services on or around his initial evaluation after he injured his hand. *See* Decl. of Counsel, Exhibit A, p. CENT 000303 ("Immobilize and refer to hand surgery/ortho asap."); *see also* Decl. of Counsel, Exhibit A, pp. CENT 000298 (evaluating Templin's chart and finding "Patient has hand specialist consult placed"); CENT 001785 (showing medical records from February 10, 2023 stating "Chart review shows an offsite consult is pending for ortho"); CENT 001812 (stating "Patient has urgent consult for ortho due to thumb fracture" on February 3, 2023). As shown from these records, approximately three days after his injury, Templin had an offsite orthopedic specialist consultation pending. *Id.* The records also indicate that Defendants secured an orthopedic specialist appointment for Templin on February 22, 2023. *Id.* at pp. CENT 000279-280.

According to the information provided by the orthopedic specialist's office, the earliest date the appointment could be scheduled for was July 13, 2023. *Id.* at p. CENT 000194. Defendants attempted to move the appointment to an earlier date without success. *Id.* at pp. CENT 000254 ("St. Lukes is unable to get pt. scheduled any sooner than July"); CENT 000280 ("Email sent to RMD whom will be looking into alternative routes to get patient seen sooner then [sic] July."). One clinic declined to see Templin. *Id.* at p. CENT 000279. Templin's father even attempted to create an appointment and had the same issues because the specialist was "booked out." *Id.* at p. CENT 000234.

In addition, Templin claims that Defendants should have referred Templin for emergency care. *See* Dkt. 27-1, Exhibit B, ¶¶ 29, 40, 41, 42, 43, 47, 85, 86, 87. A decision to take Templin to obtain emergency medical care is a medical judgment and therefore cannot be considered cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). Such medical judgment was

within the medical decision-making power of the Defendants. *Id.*

Further, the medical records indicate that Templin's fracture was healing at different points of his medical treatment. *See* Decl. of Counsel, Exhibit A, pp. CENT 000207 ("Healed posttraumatic deformity of the first metacarpal base with posttraumatic osteoarthritis"); CENT 000246 ("Healing fracture of the thumb metacarpal with stable alignment compared to the previous exam"). Even after seeing the orthopedic specialist, Templin was recommended to return to activities as tolerated and to follow-up in six months. *Id.* at p. CENT 000207. Dr. Judd also stated that surgery on the hand would "probably not be the best option." *Id.* at p. CENT 000194.

Simply put, Templin knew these facts prior to filing his Complaint and Amended Complaint. These facts have been available to him for the past approximately ten months, if not earlier. Any subsequent delay, coupled with the fact that there is no satisfactory reason for why such facts were not included in the first Complaint are enough to deny the Motion. Templin's alleged facts also contradict many of the statements made in the medical records. Templin's alleged facts leave out important information that is relevant to this matter. As such, the undue delay and bad faith efforts on Templin's part provide sufficient grounds for denial of the Motion.

Further, as shown below, the alleged facts in the Amended Complaint are not enough to satisfy a § 1983 claim and thus both grounds are reasons to deny the Motion.

B.   **Templin's Amended Complaint is futile because the Defendants' actions do not meet the standards for a § 1983 claim for inadequate medical care.**

The Defendants' actions are insufficient to support an alleged § 1983 claim and therefore make the claims futile. Templin is required to show that the Defendants acted with deliberate indifference in his medical treatment. *Estelle*, 429 U.S. at 104. Templin has arguably alleged negligence, but that is plainly insufficient to state a cognizable § 1983 claim. *Id*. A dispute as to medical judgment, based on a medical decision, is "[a]t most" a question of medical malpractice,

RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED
COMPLAINT - 9

not a question of cruel and unusual punishment." *Id*. Further, "[a] prison medical official who fails to provide needed treatment because he lacks the necessary resources can hardly be said to have intended to punish the inmate." *Peralta v. Dillard*, 744 F.3d 1076, 1084 (9th Cir. 2014).

Defendants' actions did not rise to the level of serious deprivation to reach cruel and unusual punishment, nor did the medical care display deliberate indifference to Templin's healthcare concerns.

**1.    Templin's providers did not seriously deprive Templin of medical care.**

Templin's Amended Complaint alleges that Defendant disregarded his serious medical condition and delayed medical care for his hand. *See* Dkt. 27-1, Exhibit B, ¶¶ 76-93. However, such claims are futile as shown by Templin's medical records. *See* Decl. of Counsel, Exhibit A.

For example, on January 30, 2023, the date Templin allegedly broke his hand, Templin was seen by Defendant Ballard who ordered x-rays and Tylenol or Ibuprofen. *Id.* at pp. CENT 000304-306. Defendant Ballard also instructed Templin to inform medical of any change in his condition. *Id.* The next day, Defendant Ballard instructed Templin to immobilize the hand as much as possible and placed a referral for "ortho." *Id.* at pp. CENT 000301-303. As stated in Defendant Centurion's Provider Manual, this was the process expected of Defendant Ballard. Dkt. 27-1, Complaint Exhibit A, pp. 8, 10. When Templin was transferred from ISCC to IMSI on March 17, 2023, Templin's appointments and medical history were transferred with him, including an on-site provider visit. Decl. of Counsel, Exhibit A, pp. CENT 001587-1589.

As detailed above, Defendants attempted to secure an orthopedic specialist appointment for Templin, but they met significant roadblocks which were outside their control. For example, as early as February 9, 2023, a "hand specialist consult" was in place. *Id.* at pp. CENT 000298-300. Despite the early consult having been obtained, there remained significant roadblocks outside

of their control, including but not limited to the fact that the outside provider could not see Templin any earlier than July, 2023. *See, e.g., Id.* at pp. CENT 000254 (showing the earliest date the appointment could be schedule was in July); CENT 000279-282 (showing receipt of appointment date and attempts to make the appointment earlier). Notably, other outside providers declined to even see Templin. *Id.* at p. CENT 000279. Further, Templin's father attempted to create an appointment and had issues getting an appointment. *Id.* at p. CENT 000234. In short, Defendants acted promptly and diligently in seeking to secure an outside consultation for Mr. Templin, and did not act with deliberate indifference to his medical needs. Rather, the subsequent delay was due to factors outside their control.

Not only did Defendants act diligently to secure the necessary orthopedic consult, but they also continued to provide him with appropriate medical care. A splint placed by Defendants was helping heal Templin's hand. *See Id.* at pp. CENT 000246 ("Reviewed recent xray report from image obtained 04/28/23 which indicates stable alignment and cont. healing"); CENT 000234 ("Healing fracture of the thumb metacarpal with stable alignment"). Even after Templin was seen by the orthopedic specialist, Templin was allowed to return to activities he could tolerate. *Id.* at p. CENT 000207. In fact, the orthopedic specialist believed that surgery would limit Templin's range of motion and was probably not the best option. *Id.* at p. CENT 000194 (summarizing Dr. Judd's notes on Templin's visit on July 25, 2023).

In addition to the treatment by the above-listed Defendants, Templin did not follow his medical provider's instructions. *See Id.* at pp. CENT 001759-1760 (stating that Defendant Jackson had to remind Templin to leave the splint on after Templin reported taking it off the day prior); CENT 000196 ("patient was discharged from Physical Therapy due to non-compliance, yet he has admitted the therapy was helping improve his ROM").

Despite Templin's claims otherwise, the alleged facts are futile and will not be able to survive a § 1983 claim analysis. The Defendants involved did not seriously deprive Templin of any medical services as shown by the records provided. *See* Decl. of Counsel, Exhibit A. Defendants continually monitored Templin for any concerning symptoms; performed x-rays, provided medication, and other treatments to help Templin deal with his pain and provide healing; and performed all services in the best interest of Templin. *Id.* The medical care by Defendants shows that Templin was not seriously deprived of medical treatment required under a § 1983 claim.

Further, any delay by Defendants in obtaining medical services, specifically those relating to the orthopedic specialist, were due to factors outside of the Defendants' control. The Defendants made reasonable efforts to get Templin in as soon as possible, but they could not control an orthopedic office's refusal to see Templin, or a five-month provider backlog in obtaining a consultation. Even Templin's father had the same problem when trying to secure medical services. Thus, Templin's § 1983 claims against Defendants are futile and this Court should deny the current Motion.

      **2.    Templin fails to allege more than mere negligence as to the individual Defendants making the claim futile.**

In the instant case, Templin did not allege new facts within his Amended Complaint to claim more than mere negligence against the individual Defendants listed. As provided in the Amended Complaint, Templin was seen by multiple prison medical providers numerous times following his injury. *See* Dkt. 27-1, Exhibit B, ¶¶ 24, 39, 41, 42, 43, 44, 47, 48, 53, 59, 60. Upon injuring his thumb, the prison medical providers promptly imaged Templin's injury and continued evaluating and monitoring the injury. *Id.* at ¶¶ 24, 39. Templin also acknowledges that St. Luke's received a referral mere days after he broke his thumb. *Compare* Dkt. 27-1, Exhibit B, ¶ 24 *with* ¶ 48. Templin's Amended Complaint revolves around an alleged failure to secure treatment by a

specialist. *See generally* Dkt. 27-1, Exhibit B. As stated above, Defendants could not control when a specialist—employed offsite and in the private sector—would be willing and able to evaluate Templin's injuries. *Peralta*, 744 F.3d at 1084 ("A prison medical official who fails to provide needed treatment because he lacks the necessary resources can hardly be said to have intended to punish the inmate."). Nor could Defendants force an orthopedic office to see a patient. *Id.*

Templin's Motion to Amend should be denied as to the individual Defendants because Templin's claims against the individual Defendants are futile. *Harris*, 847 F.3d at 656. Based on Templin's claims against these individual Defendants, Templin has failed to allege sufficient facts to show deprivation of, or deliberate indifference to a serious medical need, and such facts are rebutted by his medical chart. Templin continues to raise questions of medical judgment, summarily arguing that Templin should have been referred to a specialist, transported to an emergency department, and his referral to a specialist should have been sooner. Dkt. 27-1, Exhibit B, ¶¶ 39, 41, 42, 43, 47, 53, 59, 60. However, for security reasons, Templin was only informed of the fact that a date to see the specialist was in place. In fact, it was against Defendant Centurion's policy to share such information with Templin. *See* Dkt. 27-1, Complaint Exhibit A, p. 12 ("When working with the resident patient, it is important that you do not share any information with him/her specific to follow-up recommendations and particularly follow-up appointment dates, if already and/or previously scheduled.").

Further, as shown above, Templin's hand showed signs of healing and so emergency services were not necessary in the medical judgment of Defendants. *See* Decl. of Counsel, Exhibit A, pp. CENT 000207 ("Healed posttraumatic deformity of the first metacarpal base with posttraumatic osteoarthritis"); CENT 000246 ("Healing fracture of the thumb metacarpal with stable alignment compared to the previous exam").

RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT - 13

Templin's failure to allege sufficient facts to give rise to a cognizable § 1983 claim related to his medical care means that the Amended Complaint is futile. *Estelle*, 429 U.S. at 107. For these reasons, Defendants respectfully request that Court deny Templin's Motion.

### 3. Templin fails to allege certain Defendants personally participated in any alleged constitutional violation and are thus futile.

Templin's Amended Complaint is also futile as to the individual Defendants Richardson, Valley, Siegert, Smock, Johnson, Ballard, Jackson, Underwood, King, Wu, Scrobe, and Wilcox because the additional facts in the Amended Complaint still fail to set forth any allegations these Defendants personally participated in any alleged constitutional violation. *Crumpton*, 947 F.2d at 1420 (identifying that a § 1983 claim requires "conduct by a defendant). Templin allegedly sent "Health Services Requests […], Resident Concern Forms, and filed grievances, and appeals, or otherwise interacted with" a number of these individual Defendants. Dkt. 27-1, Exhibit B, ¶ 26. This allegation is plainly inadequate to state a claim for relief against every—or any— individually named Defendant, who may have come into contact with Templin. See *Vera Castrejon* v. Ivy Med., PLLC, No. 1:21-CV-00354-AKB, 2024 WL 1975661, at *3 (D. Idaho May 3, 2024). Moreover, even where Templin pleads additional factual allegations, his allegations remain insufficient to state a plausible claim for relief against any individual Defendant. Accordingly, any claim against an individually named Defendant is futile.

Here, the facts added as part of Templin's Amended Complaint fail to allege facts sufficient to state an individual capacity claim against the individual Defendants. First, as to Defendants Richardson and Valley, Templin identifies each individual's employment status and authority along with the capacity in which the individual is sued. Dkt. 27-1, Exhibit B, ¶¶ 7, 8, 32. Templin then alleges that Defendants Richardson and Valley knew about Templin's altercation; received Health Services Requests, Resident Concern Forms, grievances, and appeals; and otherwise

interacted with Templin's father. *Id.* at ¶¶ 23, 26, 45, 47. That an individual received, responded to and/or denied a Health Service Request, Resident Concern Form, grievance or appeal is insufficient to give rise to liability under § 1983. *Nelson*, 2024 WL 4494903, at *3 ("[A] defendant whose only role in a constitutional violation involved the denial of an administrative grievance cannot be held liable under § 1983."). Further, as provided above, Templin's medical care in this matter was not in violation of his Eighth Amendment rights and falls short of the standard required for a § 1983 claim. In addition, when Templin was transported from ISCC to IMSI, his medical care and appointments were transferred and discussed with him upon his arrival. Decl. of Counsel, Exhibit A, pp. CENT 001587-1589. Accordingly, Templin's claims against Defendants Richardson and Valley are futile because Templin failed to allege sufficient facts to show personal participation by either of these Defendants to give rise to a § 1983 claim.

Templin fails to allege sufficient facts to give rise to a § 1983 claim as to Defendants Siegert, Smock and Johnson. For these Defendants, Templin alleges the individual's employment status; the capacity in which the individual is sued; receipt of Health Services Requests, Resident Concern Forms, grievances, and appeals; and was informed by Templin's friend, father, and defense attorney that they believed he was not receiving proper medical treatment. *See* Dkt. 27-1, Exhibit B, ¶¶ 9, 10, 12, 26, 31, 44, 46, 47, 50, 51, 54, 55. Templin once again failed to provide sufficient grounds demonstrating how not responding to and/or denying a Health Service Request, Resident Concern Form, grievance or appeal is sufficient to give rise to liability under § 1983. *Nelson*, 2024 WL 4494903, at *3. Further, there are no facts to show the qualifications and medical expertise of Templin's friend, father, or defense attorney to develop their opinion as to the sufficiency of Templin's medical care. As stated above, Templin's father had trouble obtaining an appointment for Templin as well. Decl. of Counsel, Exhibit A, p. CENT 000234. Accordingly,

Templin's § 1983 claims against Defendants Siegert, Smock and Johnson are futile.

Templin fails to allege sufficient facts to give rise to a § 1983 claim as to Defendants Ballard, Jackson, Underwood, King, Wu, and Wilcox. Templin alleges these Defendants' employment status; the capacity in which each individual is being sued; that the individual received Health Services Requests, Resident Concern Forms, grievances, and appeals; and that the individual examined or otherwise provided care for Templin. *See* Dkt. 27-1, Exhibit B, ¶¶ 13, 14, 15, 16, 17, 19, 26, 39, 40, 41, 42, 43, 47, 53, 60. In this respect, Templin again fails to allege any personal participation sufficient to give rise to a claim under § 1983 claim.

Further, Defendant Ballard ordered hand x-rays on her initial visit on January 30, 2023, and referred Templin to an orthopedic specialist during a follow-up visit the next day. *See* Decl. of Counsel, Exhibit A, pp. CENT 000301-306. For Defendant Underwood, there was a "hand specialist consult placed" and Templin's thumb was casted. *Id.* at pp. CENT 000298-300. Therefore, any referral to a hand specialist at this point not only would have been repetitive, but the prior actions in securing a consult as documented in the medical chart would have been known to subsequent providers, obviating the need for additional requests for the same care. *Id.*

As to Defendant Jackson, on February 20, 2023, Defendant Jackson assessed Templin's injury and a daily "neurocheck" was ordered based on her observations. *Id.* at pp. CENT 001759-1760. Further, as already stated, a hand consult check was in place. *Id.* at pp. CENT 000298-300. With regard to Defendant King, as far back as February 22, 2023, Templin was scheduled to see an orthopedic specialist. *Id.* at p. CENT 000280. Given that Defendant King provided care to Templin on May 10, 2023, Defendant King was under no obligation to discuss her findings on that date with a supervisor as Templin claims. For Defendant Wu, as already stated, Templin had an orthopedic appointment already scheduled at the time Defendant Wu treated Templin and any

efforts to request an orthopedic appointment would have been duplicative. *Id.* Regarding Defendant Wilcox, on February 3, 2023, x-rays and acetaminophen-codeine were ordered for both of Templin's hands and a hand specialist consult had already been requested three days prior. *Id.* at pp. CENT 1812-1814; CENT 001828; CENT 002330. On February 10, 2023, Defendant Wilcox treated Templin with a cast and ensured that an offsite consult was in the works. *Id.* at p. CENT 001785.

The actions by these Defendants can hardly be considered a serious deprivation of or deliberate indifference toward Templin's medical condition and would thus be futile. Further, Templin attempts to substitute these Defendants' medical judgment with his own, despite having no expertise to otherwise provide his opinions. *Estelle*, 429 U.S. at 107.

Templin also fails to allege sufficient facts to give rise to a § 1983 claim as to Defendant Scrobe. Templin generally alleges Ms. Scrobe's employment status; the capacity in which she is sued; that she received Health Services Requests, Resident Concern Forms, grievances, and appeals; and that she discontinued a front cuff order. *See* Dkt. 27-1, Exhibit B, ¶¶ 18, 26, 69. However, on March 7, 2024, Templin did not have a front cuff order in place. Decl. of Counsel, Exhibit A, pp. CENT 001064-1066. As explained to Templin on that date, a front cuff memo had to be approved by both medical and security and his was not approved. *Id.* at p. CENT 001064 ("This RN informed the patient that the memo has to be approved by both medical and security. His was not approved."). Further, on March 21, 2024, Templin was examined and it was determined that a front cuff memo was not medically necessary. *Id.* at p. CENT 000130 ("Based on physical exam findings today, it appears a front cuff memo is not medical [sic] necessary."). Therefore, without a front cuff memo in place, it is futile to argue that Defendant Scrobe seriously deprived or acted deliberately indifferent to Templin's medical need.

RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT - 17

At bottom, Templin's claims against each of the individually named Defendants is futile. Each Defendant treated Templin based upon his medical needs at the time. No Defendant showed deliberate indifference or seriously deprived Templin of medical care. Further, the individual Defendants could not control when to schedule Templin's orthopedic specialist consultation. Therefore, Templin's Motion is futile and Defendants are entitled to a denial of the Motion as made in this Response.

C.  **Templin's claims against Defendant Centurion and Defendant Tewalt are futile.**

Templin's claims against Defendant Centurion and Tewalt are futile because the medical care provided to Templin was reasonable and within the standard of care.

Prison officials are not deliberately indifferent to a prisoner's medical needs unless they act wantonly. *Peralta*, 744 F.3d at 1082. "[W]hether an official's conduct 'can be characterized as "wanton" depends upon the constraints facing [him].'" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 302, 111 S. Ct. 2321 (1991)). "He's not liable 'if [he] responded reasonably.'" *Peralta*, 744 F.3d at 1082 (quoting *Farmer*, 511 U.S. at 844, 114 S. Ct. 1970).

In *Peralta*, a prison official was sued by a prisoner after delays in obtaining dental work. 744 F.3d at 1080. The prison officials claimed that the delay in dental work was due to the lack of dentists available to provide care. *Id.* at 1082. The Court analyzed whether the prison officials could be found liable under a § 1983 claims based on the lack of available dentists that was no fault of the prison officials. *Id.* The court found that failing to provide treatment due to lack of resources cannot be said to intend to punish the inmate. *Id.* at 1084.

Just as in *Peralta*, Templin's delay in medical care was not due to anything that Centurion or Tewalt could control. As detailed above, one orthopedic specialist refused to see Templin for unspecified reasons. Decl. of Counsel, Exhibit A, p. CENT 000279. Further, the orthopedic

specialist Templin eventually visited was unable to provide an earlier appointment, and Defendants therefore obtained the earliest possible appointment for Templin. *Id.* at p. CENT 000194. In addition, Defendants attempted to move the appointment to an earlier date without success. *Id.* at pp. CENT 000254 ("St. Lukes is unable to get pt. scheduled any sooner than July"); CENT 000280 ("Email sent to RMD whom will be looking into alternative routes to get patient seen sooner then [sic] July."). Defendants were not able to get an earlier appointment because of these factors, which plainly were well-outside their control. It would be futile for Templin to make a claim otherwise.

Based on these factors, Defendants Tewalt and Centurion cannot be shown to have demonstrated deprivation of, or deliberate indifference toward, Templin's medical needs. Thus, Templin's § 1983 claims against these Defendants would be futile.

## CONCLUSION

For the foregoing reasons, Defendants Centurion of Idaho, LLC, Tim Richardson, Randy Valley, Rona Siegert, Connie Smock, Chris Johnson, Rebecca Ballard, Christina Jackson, Rex Underwood, Chandra King, Johnny Wu, Stacey Scrobe, and Crystal Wilcox respectfully request the Court deny Plaintiff's Motion for Leave to File First Amended Complaint.

DATED: December 1, 2025

                                         BRASSEY CRAWFORD, PLLC

                                         By */s/ Jason G. Murray*
                                         Andrew C. Brassey, Of the Firm
                                         Jason G. Murray, Of the Firm
                                         *Attorneys for Defendants Centurion of Idaho, LLC, Josh Tewalt, Tim Richardson, Randy Valley, Rona Siegert, Connie Smock, William Rogers, Ashley Rino, Johnny Wu, Christina Jackson, Rex Underwood, Rebecca Ballard, Kyle Wagner, Chandra King, Chris Johnson, Terissa Peterson, Wendy Orm, Crystal Wilcox, and Stacey Scrobe*

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on December 1, 2025, I served a true and correct copy of the foregoing upon each of the following individuals by causing the same to be delivered by the method and to the addresses indicated below:

| | |
|---|---|
| Jane Gordon<br>JANE GORDON LAW<br>1004 West Fort Street<br>Boise, Idaho 83702<br>jane@janegordonlaw.com | ____ U.S. Mail, postage prepaid<br>____ Hand-Delivered<br>____ Overnight Mail<br>____ Facsimile<br>_X_ ECF |
| Michael J. Elia<br>Nathan C. Beckman<br>MOORE ELIA KRAFT<br> & STACEY, LLP<br>702 West Idaho, Suite 800<br>P.O. Box 6756<br>Boise, Idaho 83707<br>mje@melawfirm.com<br>ncb@melawfirm.com | ____ U.S. Mail, postage prepaid<br>____ Hand-Delivered<br>____ Overnight Mail<br>____ Facsimile<br>_X_ ECF |

                                              */s/ Jason G. Murray*
                                              Jason G. Murray